UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | |
|---|---|
| NIKITA A. MISTRI, <br><br> Petitioner, <br><br> v. <br><br> WARDEN, SOUTHERN LOUISIANA ICE PROCESSING CENTER, in his official capacity, MARKWAYNE MULLIN, in his official capacity as Secretary of Homeland Security, TODD M. LYONS, in his official capacity as Senior Official Performing the Duties of the Director of U.S. Immigration and Customs Enforcement, TODD BLANCHE, in his official capacity as Acting Attorney General of the United States, <br><br> Respondents. | Civil Action No. |

## VERIFIED PETITION FOR WRIT OF HABEAS CORPUS

Petitioner Nikita Mistri petitions this Court for a writ of habeas corpus

pursuant to 28 U.S.C. § 2241 to compel her release from custody, as her current

civil immigration detention violates the Due Process Clause of the United States

Constitution and the Administrative Procedure Act.

## JURISDICTION AND VENUE

1.        This action arises under the Constitution of the United States and the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1101 *et. seq.*

2.        This court has subject matter jurisdiction under 28 U.S.C. §§ 2241 and 1331, and Article I, section 9, clause 2 of the United States Constitution.

3.        This Court may grant relief under the habeas corpus statutes, 28 U.S.C. § 2241 *et seq.*, the All Writs Act, 28 U.S.C. § 1651, and the INA, 8 U.S.C. § 1252(e)(2). This Court also has remedial authority under the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*

4.        Venue is proper in the United States District Court for the District of Columbia, because the Respondents, Markwayne Mullin as the Secretary of Homeland Security and Todd M. Lyons as the Acting Director of U.S. Immigration and Customs Enforcement who have issued the policies to detain victims of a severe form of trafficking, are located in this District and the Respondent, Warden of the Southern Louisiana ICE Processing Center, who has physical custody of the Petitioner answers to the Respondents in this District.

## PARTIES AND BACKGROUND

5.        **Petitioner  Nikita Mistri** is a native of India and victim of a severe form of human and labor trafficking, who entered the United States on December 19, 2022, without inspection at or near San Diego, California  Since then,

the Petitioner has not left the United States.  The Petitioner has a domestic partner, Pareshkumar Patel, who is a lawful permanent resident of the United States.  He married the Petitioner in a religious ceremony and seeks to marry her in a legally binding ceremony as soon as she is released.  For over nine months, she has been deprived of the support and affection of her lawful permanent resident domestic partner.

6.       According to Respondents in this District, Petitioner is subject to *Yajure Hurtado* because they take the position she entered the United States without inspection. Based on this, on March 4, 2026 the immigration judge entered an order denying bond on custody redetermination proceedings, citing *Yajure Hurtado* as a jurisdictional bar. *See* Order Denying Bond, attached as **Exhibit 1**. Additionally, on June 18, 2026, upon a subsequent request for a bond hearing based on the Petitioner's pending T Nonimmigrant Visa, the immigration judge denied the respondent a bond hearing again, but this time based on her final removal order, attached as **Exhibit 2.**

7.       Petitioner remains detained at the Southern Louisiana ICE Processing Facility. Thus, Petitioner is "in custody" for the purpose of 28 U.S.C. § 2241.

8.       **Respondent Warden of Southern Louisiana ICE Processing Center** is the Warden of the Southern Louisiana ICE Processing Center, where

3

Petitioner is being held. Respondent Warden is the immediate legal custodian of Petitioner, and he is sued in his official capacity.

9.    **Respondent Todd M. Lyons** is Senior Official Performing the Duties of Director of United States Immigration and Customs Enforcement ("ICE"). ICE is the federal agency responsible for custody decisions relating to noncitizens charged with being removable from the United States, including the arrest, detention, and custody status of non-citizens. As acting director of ICE, Respondent Lyons has authority over its actions, including Petitioner's detention. He is sued in his official capacity.

10.    **Respondent Markwayne Mullin** is the Secretary of the United States Department of Homeland Security ("DHS"). DHS is the federal agency that has authority over the actions of ICE. As Secretary of DHS, Respondent Mullin has authority over its actions, including Petitioner's detention. He is sued in his official capacity.

11.    **Respondent Todd Blanche** is the Acting Attorney General of the United States and the senior official of the U.S. Department of Justice. He is sued in his official capacity. In that capacity, he has the authority to adjudicate removal cases and to oversee the Executive Office for Immigration Review, which administers the immigration courts and the BIA.  Respondent Blanche is responsible for decisions relating to noncitizens charged with being removable

4

from the United States, including the arrest, detention, and custody status of noncitizens. Therefore, he is also Petitioner's legal custodian.

## VENUE

12.     The civil habeas statute applies to individuals who are "in custody." 28 U.S.C. § 2241(c).  Whether an individual is "in custody" is determined at the time the habeas petition is filed.  *Spencer v. Kemna*, 523 U.S. 1, 7 (1998) (addressing identical language in 28 U.S.C. § 2254).

13.     Habeas petitions generally are filed in the district court with jurisdiction over the filer's place of custody, also known as the district of confinement. *See Rumsfeld v. Padilla*, 542 U.S. 426, 443 (2004) ("The plain language of the habeas statute . . . confirms the general rule that for core habeas petitions challenging present physical confinement, jurisdiction lies in only one district: the district of confinement."); 28 U.S.C. § 2241(a) (providing for habeas petitions "within [courts'] respective jurisdictions").

14.     However, not all habeas petitions follow this rule. In *Padilla*, the Supreme Court stated the district of confinement rule applies to "core habeas petitions challenging present physical confinement." 542 U.S. at 443. The Court expressly declined to decide whether habeas petitions filed by noncitizens "detained pending deportation" are this type of "core challenge[]." *Id.* at 435 & n.8.

5

15.     This is a habeas petition  filed for the Petitioner pending deportation (removal), who has a valid, prima facie eligible and bona fide claim to a T Nonimmigrant Visa, as a victim of a severe form of trafficking in persons. Wherefore, the District of Columbia has jurisdiction to hear this habeas petition.

## **LEGAL FRAMEWORK**

12.     District courts have the power to grant writs of habeas corpus. 28 U.S.C. § 2241(a). The Constitution guarantees that the writ of habeas corpus is available to every individual detained within the United States. *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const. Art. I, § 9, cl. 2); *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973) ("The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and ... the traditional function of the writ is to secure release from illegal custody.").

13.     A district court's power includes jurisdiction to hear habeas challenges to immigration-related detention. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001). Indeed, noncitizens in immigration proceedings are entitled to Due Process under the Fifth Amendment of the U.S. Constitution. *Reno v. Flores*, 507 U.S. 292, 306 (1993).

14.     On May 20, 2026, a federal judge in the Central District of California issued a nationwide order in *Immigration Center for Women and*

*Children v. Mullin*, (2:25-cv-09848), that temporarily blocks the government from enforcing policies that allowed ICE to arrest, detain, and deport noncitizen survivors of crime, to include T nonimmigrant petitioners, while their petitions were pending before United States Citizenship and Immigration Services (USCIS).

15.     The Petitioner has is noncitizen immigrant who is a human and labor trafficking victim.  She is also a victim of an assault and battery with a deadly weapon (knife) by her domestic partner's mistress.  She was immediately detained after calling 911 as a domestic violence victim when her husband's mistress tried to stab her.  The Petitioner has a prima facie eligible, bona fide T Nonimmigrant Visa pending before USCIS.   The Petitioner should be released immediately as Respondent's detention of her is causing irreparable harm to her as a victim of a severe form of trafficking and domestic violence.

16.     The respondent was eligible for bond when she was first detained, however, the Respondents denied her a bond hearing by  taking the position that Petitioner must be mandatorily detained under the INA as set forth in *Matter of Yajure Hurtado*, in which the BIA concluded ICE could treat undocumented immigrants already present in the United States as arriving aliens subject to mandatory detention under 8 U.S.C. § 1225.

17.     Reliance on *Hurtado* would make Petitioner ineligible for bond. In *Hurtado*, the BIA concluded that noncitizens "who have been residing in the

United States for years without lawful status" are considered "applicants for admission" and are thus subject to the mandatory detention provision in INA § 235(b)(2)(A), 8 U.S.C. § 1225(b)(2)(A) "for the duration of the immigration proceedings[.]" *Hurtado*, 29 I&N Dec. at 220.

18.    But section 1225(b)(2) does not apply to Petitioner as she is not a recent arrival nor is he seeking admission. Her continued detention under section 1225(b)(2) is therefore unlawful. Instead, as a noncitizen who previously entered the United States, section 1226(a) governs her detention.

19.    Under section 1225(b)(2), "in the case of an alien who is an *applicant for admission*, if the examining immigration officer determines that an alien *seeking admission* is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained." 8 U.S.C. § 1225(b)(2) (emphasis added). By contrast, a noncitizen arrested on a warrant issued by the Attorney General "*may*" be detained but is also eligible for release on bond. 8 U.S.C § 1226(a) (emphasis supplied). "Courts have repeatedly held that § 1225 applies to arriving aliens, while § 1226 governs detention of 'aliens already in the country.'" *Palma v. Trump*, 2025 WL 2624385, at *2 (D. Neb. Sept. 11, 2025) (quoting *Jennings v. Rodriguez*, 583 U.S. 281, 281 (2018)). As the Court in *Palma* noted, "[t]he BIA's decision in *Hurtado* represents a stark departure from that approach." *Palma*, 2025 WL 2624385, at *2.

20.    Indeed, federal courts throughout the United States have reached

8

that same decision[1], as well as the majority of United States Circuit Courts.  *See, Hernandez Alvarez v. Warden, Federal Det. Ctr. Miami*, ---F.4th---, 2026, WL 12343395, at *1 (11th Cir. May 6, 2026).  *See also, Cunha v. Freden*, No. 25-3141, 2026 WL 1146044 (Apr. 28, 2026) (holding that noncitizens who entered without inspection remain subject to discretionary detention under § 1226(a) and can seek bond); *Lopez-Campos v. Raycraft,* No. 25-1965, 2026 WL 2145672 (6th Cir. May 11, 2026) (holding that non-citizens arrested in the interior of the U.S. years after entering without inspection are not subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A)).

21.      Moreover, Respondents admit that Petitioner is subject to section 1226, because (1) the Notice to Appear charged her as someone "present in the United States who has not been admitted or paroled." *See* Notice to Appear, attached as **Exhibit 2**; *see also Ardon-Quiroz v. Assistant Field Dir.*, 2025 WL 3451645, at *6 (S.D. Fla. Dec. 1, 2025) (such classification on NTA places petitioner "squarely within section 1226"); *Perez v. Berg*, 2025 WL 2531566, at *2 (D. Neb. July 24, 2025) ("The Court notes that the government itself charged Petitioner as an alien present in the United States who has not been admitted or paroled rather than an arriving alien.") (quotations omitted).

---

[1] Georgia has reached the same conclusion. *J.A.M. v. Streeval*, 2025 WL 3050094 (M.D. Ga. Nov. 1, 2025); *P.R.S. v. Streeval*, 2025 WL 3269947 (M.D. Ga. Nov. 24, 2025). *See also Villa* Consolidated Cases, No. 5:25-cv-89 (S.D. Ga.).

1.      Finally, the BIA's controlling authority on the IJ is not dispositive. *Garcia v. Shanahan*, 615 F. Supp. 2d 175, 179 (S.D.N.Y. 2009) ("While the Immigration and Nationality Act ... precludes review of the 'Attorney General's discretionary judgment' with regard to 'detention or release of any alien or the grant, revocation, or denial of bond or parole,' 8 U.S.C. § 1226(e), the United States Supreme Court rejected the contention that § 1226(e) deprives courts of jurisdiction to consider challenges to the interpretation of the mandatory detention statute.") (citing *Demore v. Kim*, 538 U.S. 510, 517, 123 S.Ct. 1708, 155 L.Ed.2d 724 (2003)). Courts have independent judgment in determining whether an agency has acted within its statutory authority. *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 412, 144 S.Ct. 2244, 219 L.Ed.2d 832 (2024).

2.      As other courts have concluded since *Hurtado*, "[t]he text of Sections 1225 and 1226, together with binding Supreme Court precedent interpreting those provisions [...] confirm that [the petitioner] is subject to Section 1226(a)'s discretionary detention scheme." *Sampiao v. Hyde*, 2025 WL 2607924, at *8 (D. Mass. Sept. 9, 2025) (granting habeas relief to a noncitizen who was arbitrarily detained following three years of release on an order of recognizance).

3.      Here, Petitioner entered the United States in December 2022.  To determine that she is *seeking admission* after living in the United States is nonsensical, contrary to the plain meaning of the statutes, and the Court should

10

disregard the *Hurtado* decision as contrary to the INA and federal law.

4.      As such, under section 1226(a), this Court has the authority to review Petitioner's request for habeas relief and release from immigration detention.

5.      Because Petitioner is detained subject to section 1226(a), not section 1225(b)(2), the Court should, in the event it is raised by Respondents, find that she is not required to await further determination by the Board of Immigration Appeals ("BIA"). Because BIA has adopted a policy that deprives Petitioner of jurisdiction to seek a bond from immigration detention, further review of the IJ's decision invoking *Hurtado* will be futile. *Vazquez v. Feeley*, 2025 WL 2676082, at *10 (D. Nev. Sept. 17, 2025) ("Because, as discussed below, this Court finds the BIA has adopted a policy [in *Hurtado*] that likely violates federal law, awaiting the BIA's decision regarding Petitioner is futile.").

<u>**COUNT I**</u>
**Violation of Fifth Amendment Right to Due Process**
**(against all Respondents)**

6.      Petitioner re-incorporates and re-alleges paragraphs 1-5 above as if fully set forth herein.

7.      "[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 693. While certain constitutional

11

protections do not extend outside the "geographic borders" of the United States, "legal circumstances change" as soon as a noncitizen "enters the country." *Id.; see also A.A.R.P. v. Trump*, 605 U.S. 91, 94 (2025) ("'[T]he Fifth Amendment entitles aliens to due process of law in the context of removal proceedings.'") (quoting *Trump v. J.G.G.,* 145 S. Ct. 1003, 1006 (2025) (per curiam)).

8.    To determine whether civil detention violates a detainee's due process rights, courts apply the three-part test in *Mathews v. Eldridge*, 424 U.S. 319 (1976). Under *Mathews,* courts consider (1) the private interest that will be affected by the official action; (2) the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and (3) the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail. *See id.* at 335.

9.    Here, all three factors favor Petitioner. She has a significant private interest at stake. *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004) (freedom from physical detention is "the most elemental of liberty interests"); *see also Zadvydas*, 533 U.S. at 690 ("Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects.").

10.    Petitioner is experiencing all the deprivations that come with

physical detention, including separation from her family and community, inability to have in-person therapy appointments related to her trafficking victimization and domestic violence and the inability to attend her required biometrics appointments for her T Nonimmigrant Visa.

11.    Next, there is a large risk of the erroneous deprivation of Petitioner's liberty interest through the procedures used in the immigration court proceedings. In fact, these deprivations have already resulted in the Petitioner's loss of her due process rights in presenting her asylum claim and loss of her due process rights of appeal.  Irreparable harm has already been done and she is being subjected to additional irreparable harm daily.

12.    Moreover, USCIS requires the Petitioner to attend biometrics appointments that ICE will not bring her to, because she is in detention.  Even though USCIS has access to the Petitioner's biometric data, to include fingerprints and photographs that they could reuse, and the Department of Homeland Security has her physical body in its custody, USCIS will deny her applications as "abandoned" if ICE (part of their own agency within DHS) does not bring her to the scheduled biometric appointments or release her from custody so that she can attend the appointments herself.

13.    Thus, the Petitioner must be immediately released so that she can attend her biometrics appointments for her T Nonimmigrant Visa application and

13

corresponding work authorization biometrics appointment.  USCIS must also reschedule her June 2026 biometrics appointment because she was in ICE custody.

14.     There are also alternative procedures, such as a cash bond, and other measures that might mitigate against the risk of flight. However, the Petitioner has a prima facie eligible and bona fide claim for a T Nonimmigrant Visa and she is not a flight risk.   She also has a domestic partner, Pareshkumar Patel, who is a lawful permanent resident, who seeks to marry the Petitioner as soon as she is released.  She has multiple avenues to adjust her status and bring herself into compliance with the immigration laws.  Finally, to the extent there is any government interest in detention, it is minimal compared with Petitioner's liberty interest.

15.     The Respondents may now argue that she has a removal order and that subjects her to mandatory detention under 8 U.S.C § 1226.  However, the T Nonimmigrant Visa regulations make it clear that a removal order issued by the Department of Homeland Security automatically cancels upon the grant of a T Nonimmigrant Visa.  *See,* 8 CFR 214.204. [2]

16.     Additionally, an applicant who is the subject of an order of

---

[2] ***Applicants with an outstanding order of removal, deportation, or exclusion issued by DHS.*** For an applicant who is the subject of an order of removal, deportation, or exclusion issued by DHS, the order will be deemed cancelled by operation of law as of the date of the USCIS approval of the application.  *See,* 8 CFR 214.204.

removal, deportation or exclusion issued by an immigration judge or the Board of Immigration Appeals (Board) may seek rescission of such order by filing a motion to reopen and terminate removal proceedings with the immigration judge or the Board.  ICE may agree, as a matter of discretion, to join such motion to overcome any applicable time and numerical limitations of 8 CFR 1003.2 and 1003.23.  *Id.*

17.    Furthermore, the Supreme Court has held that mandatory detention is not a ground for indefinite detention.  *See, Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

18.    Section 2241 habeas proceedings are available as a forum for statutory and constitutional challenges to post-removal-period detention. Statutory changes in the immigration law left habeas untouched as the basic method for obtaining review of continued custody after a deportation (removal) order becomes final, and none of the statutory provisions limiting judicial review of removal decisions applies here. *See, Zadvydas v. Davis*, at pgs. 687-688.

19.    The post-removal-period detention statute, read in light of the Constitution's demands, implicitly limits an alien's detention to a period reasonably necessary to bring about that alien's removal from the United States, and does not permit indefinite detention. *See, Zadvydas v. Davis*, at pgs. 688-699.

20.    Here, Respondents have chosen to detain Petitioner under the

15

wrong statute and in an arbitrary manner, not based on a rational and individualized determination of whether she is a safety or flight risk, in violation of due process requirements.

21.    Because section 1225 does not apply and because Respondents' detention of Petitioner violates the Fifth Amendment, the Court should order her immediate release from detention, particularly in light of the nationwide order in *Immigration Center for Women and Children v. Mullin*, (2:25-cv-09848), that temporarily blocks the government from enforcing policies that allowed ICE to *arrest, detain, and deport noncitizen survivors of crime, to include T nonimmigrant petitioners,* while their petitions were pending before United States Citizenship and Immigration Services (USCIS).

22.    Additionally, this habeas is accompanied by a Temporary Restraining Orders (TROs) to restrain USCIS from denying her applications for a T Nonimmigrant Visa for abandonment for nonattendance of her biometrics appointments ,while she is held in ICE custody.   It also is accompanied by a TRO to temporarily restrain ICE from removing the respondent while she seeks release from custody herein and to attend her biometrics appointments for her T nonimmigrant visa application and while her application for a T Nonimmigrant Visa is pending.  The Petitioner seeks to aid law enforcement in her trafficking and needs to be released to have proper access to the courts, therapy, full-time legal

assistance and her community and family support system.

23.    The Petitioner's removal is not imminent.   She is a victim of a severe form of trafficking in persons and labor trafficking.  The removal order may be removed opened and terminated upon the granting of a T No0nimmigrant Visa. *See,* 8 CFR 214.204.

24.    The instant proceedings are civil and assumed to be nonpunitive. The Respondents proffer no sufficiently strong justification for indefinite civil detention under this statute. The first justification-preventing flight-is weak or nonexistent as removal is a remote possibility based on the Petitioner's prima facie and bona fide T Nonimmigrant visa claim.

25.    Preventive detention based on any secondary justification of protecting the community has been upheld only when limited to especially dangerous individuals and subject to strong procedural protections. When preventive detention is potentially indefinite, this dangerousness rationale must also be accompanied by some other special circumstance, such as mental illness, that helps to create the danger. The civil confinement here is potentially permanent, and once the flight risk justification evaporates, the only special circumstance is the alien's removable status, which bears no relation to dangerousness." *See, Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

17

## COUNT II
### Violation of the Administrative Procedure Act ("APA"), 5 U.S.C. § 706(2)(A)
### (against all Respondents)

26.     Petitioner re-incorporates and re-alleges paragraphs 1-25 above as if fully set forth herein.

27.     Under the APA, a court "shall . . . hold unlawful . . . agency action" that is "not in accordance with law;" "contrary to constitutional right;" "in excess of statutory jurisdiction, authority, or limitations;" or "without observance of procedure required by law." 5 U.S.C. § 706(2)(A)-(D).

28.     Congress has made it clear that mandatory detention under 8 U.S.C. § 1225(b) applies to "applicant[s] for admission" who are determined to be "seeking admission." By contrast, Congress permits other noncitizens who are arrested on a warrant issued by the Attorney General to be detained (using the language "may") but those noncitizens are also eligible for release on bond. 8 U.S.C § 1226(a).

29.     Courts have interpreted section 1225 to apply to arriving noncitizens, while section 1226 applies to noncitizens already in the United States.

30.     The government contends Petitioner is an applicant for admission to which section 1225 applies.

31.     Respondents' determination that Petitioner is "seeking admission" under section 1225(b)(2) was arbitrary, capricious, an abuse of discretion, and not

otherwise in accordance with law. 5 U.S.C. § 706(2)(A). Indeed, "ICE, like any agency, 'has the duty to follow its own federal regulations.'" *Rombot v. Souza*, 296 F. Supp. 3d 383, 388 (D. Mass. 2017) (quoting *Haoud v. Ashcroft*, 350 F.3d 201, 205 (1st Cir. 2003)).

32.    Because Petitioner is not subject to mandatory detention, Respondents' determination is unlawful.

## **PRAYER FOR RELIEF**

Petitioner Nikita A. Mistri respectfully requests that the Court:

A. Retain jurisdiction over this action;

B. Issue an Order to Show Cause ordering Respondents to show cause why this Petition should not be granted within *three days* pursuant to 28 U.S.C. § 2243;

C. Declare that Petitioner's detention violates the Due Process Clause of the Fifth Amendment;

D. Declare that Petitioner's detention violates the Administrative Procedure Act;

E. Issue a Writ of Habeas Corpus ordering Respondents to release Petitioner from custody;

F. Award Petitioner attorneys' fees and costs under the Equal Access to Justice Act, and on any other basis justified under law; and

G. Grant all other relief that the Court deems just and proper.

Dated: July 7, 2026

Respectfully Submitted,

19

*/s/*  _____

Edward Palacio
1629 K Street NW, Suite 300,
Washington D.C., 20006
Office: (202) 579-0931
Email: edwin@palaciolawdc.com

*/s/*  _____

Susan Hiller*
2764 Pleasant Road
Suite A 714
Fort Mill, South Carolina 29708
M: (781)-413-1614
MA Bar. 637057
Federal District of MA Bar 637057

*Susan Hiller, Seeking Pro Hac Vice Admission

20

## <u>VERIFICATION PURSUANT TO 28 U.S.C. § 2242</u>

I submit this verification on behalf of Petitioner Nikita A, Mistri because I am the Petitioner's attorney. I hereby verify that the statements made in the foregoing Petition for Writ of Habeas Corpus are true and correct to the best of my knowledge.

Dated: July 7, 2026

*/s/*_____
Edward Palacio
1629 K Street NW, Suite 300,
Washington D.C., 20006
Office: (202) 579-0931
Email: edwin@palaciolawdc.com

*/s/*_____
Susan Hiller*
2764 Pleasant Road
Suite A 714
Fort Mill, South Carolina 29708
Office: (803)-346-9899
M: (781)-413-1614
Email: hillerlegalpc@gmail.com

MA Bar. 637057
Federal District of MA Bar 637057

*Susan Hiller, Seeking Pro Hac Vice Admission